HOUSEHOLD FINANCE CORP., APPELLEE, *v.* GILLIAM ET AL.,
APPELLANTS.

[Cite as Household Finance Corp. v. Gilliam, 12 Ohio
App. 2d 199.]

(No. 325—Decided December 20, 1967.)

*Mr. Richard E. Parrott,* for appellee.
*Mr. L. P. Henderson,* for appellants.

GUERNSEY, P. J.   This is an appeal on questions of law from a judgment of the Marysville Municipal Court in an action on a promissory note by the holder, Household Finance Corporation, against its makers, Claude Gilliam and Gladie Gilliam, husband and wife. In their answer Gilliams alleged their discharge in bankruptcy in cause No. 40229 in the United States District Court. In reply the plaintiff admits the discharge of the Gilliams in that cause but alleges that their liability on the note was not discharged because of a fraudulent statement of indebtedness made by the Gilliams to the plaintiff upon which

the plaintiff relied in making the loan, which statement, although it purported to do so, did not show all the indebtedness of the Gilliams at the time of the transaction.

A careful review of the bill of exceptions reveals that it is undisputed in evidence that the statement of indebtedness (Exhibit B) was signed solely by Claude Gilliam; that Gladie Gilliam has no actual knowledge respecting the execution of same; that the statement was complete, including amounts constituting less than all of Gilliams' then existing indebtedness, when the loan was approved by plaintiff's manager, Denney; that it had been obtained from Gilliam by plaintiff's employee, Wolf; and that Manager Denney did not see it being signed or did he have any knowledge of "what Mr. Wolf did or said" in connection with the signing. Gilliam categorically denied ever giving any credit information to the plaintiff or telling plaintiff anything about other indebtedness and testified specifically that there were no figures on the statement of indebtedness and that the same was blank when he signed it, that the loan had been arranged for by a collection agency to retire a debt in which it was interested, and that all he did to obtain the loan was to sign a blank note form and a blank statement of indebtedness form. Mr. Wolf was not called as a witness by plaintiff, and there was no other evidence offered by plaintiff to refute Gilliam's testimony. There is no evidence whatever that Gilliam gave any express authority to plaintiff or to its agents to fill in these blanks in any specific manner.

It is likewise undisputed in evidence that Exhibit C, which has no title, but which contains a breakdown of Gilliams' indebtedness allegedly given by them to the plaintiff in connection with the transaction, is merely an office form used by the plaintiff and completed by its employees on which to record employment, credit and other miscellaneous information pertaining to the borrowers or in connection with the loan, and was neither given by nor signed by the borrowers. This form does not reveal the source of the information contained thereon, and plaintiff did not call to the witness stand the person or persons filling out this form.

Plaintiff offered in evidence Exhibit D, consisting of the petition and schedules in cause No. 40229 in the United States District Court, which reveal that the only petitioning bankrupt in that cause was Claude Gilliam.

The Municipal Court rendered judgment against both of the Gilliams, which they have now appealed on questions of law assigning as error that the same is contrary to law.

We must conclude, as did the trial court, that Gladie Gilliam was not discharged in bankruptcy in cause No. 40229 in the United States District Court, and, there being no allegation or admission in the pleadings and no evidence that she was discharged in bankruptcy in some other cause, she still remains liable on the note sued upon by plaintiff, and so much of the judgment of the Municipal Court as relates to her liability is affirmed.

Section 17 of the Bankruptcy Act, Section 35(2), Title 11, U. S. Code, in form and portion relevant to the transaction here, provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit * * * in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be published in any manner whatsoever with intent to deceive, * * *."

Whether we view the transaction here as the obtaining of money by false representations (*Household Finance Corp.* v. *McComas,* 112 Ohio App. 296, and *Ohio Finance Co.* v. *Greathouse,* 64 Ohio Law Abs. 1), with relation to which the statute sets forth no requirement that the false representation be in writing, or whether we view the transaction as the obtaining of money on credit in reliance upon a materially false statement (*Household Finance Corp.* v. *Altenberg,* 5 Ohio St. 2d 190), with relation to which the statute prescribes that the false statement be in writing, in either event the "false representation" or the "false statement" must be made by the borrower, or authorized by him.

A financial statement with amounts left blank could not constitute either a false representation or a false statement by the signer thereof. There being no evidence of any express authority given by Gilliam to anyone to fill in the blanks in any amount, Gilliam could not be said to have made a false representation or false statement by express authority given by him to an agent. Implied authority to fill blanks is confined to such

insertions as are necessary to make the instrument perfect according to its nature, frame, and intended use, and there is no inference of authority to fill blanks with stipulations repugnant to the plainly expressed intention of the paper, as shown by its printed terms. 3 Corpus Juris Secundum 977, Alteration of Instruments, Section 66. The printed terms of the statement of indebtedness (Exhibit B) indicate that the blanks should be filled with such amounts as would reveal *all* the debts of the borrower(s) and there could be no implied authority to fill in such blanks by amounts which would constitute less than all of such debts. To conclude otherwise would permit the lender to commit a fraud upon itself by action of its own agent under an implied authority from the borrower. We do not conceive that such is the law.

There was, therefore, no evidence of probative value that Claude Gilliam either obtained money by false representations made by him or obtained money on credit in reliance upon a materially false statement in writing respecting his financial condition by him made or published or caused to be published in any manner whatsoever with intent to deceive. For such reasons we must conclude that Gilliam was released by his discharge in bankruptcy from the debt evidenced by the promissory note which is the subject of plaintiff's action.

The judgment against Claude Gilliam and in favor of the plaintiff is reversed and final judgment is entered dismissing plaintiff's petition against him.

*Judgment affirmed in part and reversed in part.*

YOUNGER and DUFFEY, JJ., concur.

DUFFEY, J., concurring. While I concur in Judge Guernsey's opinion, an additional ground of reversal should be noted.

In *Sun Finance & Loan Co.* v. *Cononico* (1959), 177 N. E. 2d 84, the court states:

"* * * It is a single sheet of paper with only five lines for disclosure of all creditors with address and amount. From the advertising activities of all small loan companies, from their listings with other creditors in the trusteeship proceedings in this and other courts; from the known financial stresses of those

who, for the most part, are their customers, it is manifest that five lines for listing of all indebtedness of the normal small loan customer is a woefully insufficient space, and that from twelve to twenty spaces would ordinarily be required for such a listing of creditors.

"Until small loan companies are realistic in furnishing sufficient space for the listing of existing debts by their hard pressed customers, courts, which have to do with the multiplicity of collection claims against these customers, can scarcely be blamed for viewing with suspicion the claim that such a postage stamp size paper is expected to produce an exhaustive list of indebtedness. The court finds that neither plaintiff nor defendant expected all such debts to be listed, notwithstanding the formidable language at the top of the form, and that the listing was intended, at most, as a check of credit references."

In the present case, the form used by the finance company provides only one small blank in which to insert a lump sum figure. The finance company contends that the lump sum to be so inserted was supposed to be a completely accurate addition by the customer to arrive at the sum total of all his then outstanding indebtedness. One cannot help wondering if the company claims that its customer must mentally, while sitting in the loan office, know existing, and prorate pending gas, water and electric bills; know the exact balance on outstanding charge accounts, the amount due the milkman, etc. Under present day business conditions, a man needs time and records to compute present indebtedness, and generally he must be given a specific date, *i. e.*, as of last month, last week, etc.

Ignoring the finance company's form, and looking to the substance of the loan transaction here, the statement of indebtedness must be considered as requiring, and providing, only a reasonable estimate.

To avoid a bankruptcy discharge, the finance company must prove a false, material and knowing statement.

In the absence of proof that a potential debtor was (1) specifically requested to itemize his indebtedness, (2) adequately informed as to what matters can be excluded, and the date to be used for computation, and (3) explicitly warned that any knowing misstatement is a fraud such as would prevent a discharge in bankruptcy, no discrepancy in a borrower's esti-

mated indebtedness is "material" within the requirement of the statute unless it is most gross.

The discrepancy here is not so gross as to be material. Even if considered material, it is not so gross as to imply in itself that it was a knowing misstatement. There is, therefore, insufficient evidence from which to find a false, material and knowing statement or representation.

Duffey, J., of the Tenth Appellate District, sitting by designation in the Third Appellate District.